GEORGE H. GORHAM ET AL. *vs.* THE CITY OF NEW HAVEN.

HENRY W. MUNSON *vs.* THE CITY OF NEW HAVEN.

Third Judicial District, Bridgeport, April Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Making the surface of the ground conform to the level established in the layout of a highway is not a " change " of grade for which an adjoining landowner is entitled to recover special damages under General Statutes, § 2051. That statute does not apply until the prescribed grade has become an accomplished fact in a completed and usable highway, the cutting and filling necessary thereto being merely a part of the original construction.

In an action to recover damages for an alleged change of grade, the defendant offered in evidence the survey, layout, and map, as tending to prove that the highway was, and was intended to be, laid out at the grade shown on the profile map. *Held* that in connection with the other evidence in the case these documents were properly admitted.

Argued April 15th—decided June 14th, 1904.

ACTION to recover damages resulting from a change of grade of a highway, brought to and tried by the Superior Court in New Haven County, *Thayer, J. ;* facts found and judgment rendered for the defendant, and appeal by the plaintiffs. *No error.*

Another action—Henry W. Munson *v.* The City of New Haven—identical in its issues, was tried with the foregoing case and judgment rendered for the defendant. *No error.*

*A. Heaton Robertson,* for the appellants (George H. Gorham *et al*).

*Harrison Hewett,* for the appellant (Henry W. Munson).

*Leonard M. Daggett,* for the appellee (the City of New Haven).

TORRANCE, C. J. These two cases were tried together

in the court below, but the record in only one of them—the Gorham case—is before this court. It is agreed, however, that *mutatis mutandis* the controlling facts found in the Gorham case are to be regarded as the controlling facts found in the other case.

The substance of the finding may be stated as follows : The plaintiffs are, respectively, the owners of the building lots in the city of New Haven described in their respective complaints, the land comprising said lots having been in their respective families since 1877. The lots are all vacant save one, on which stands a house erected fourteen years ago. They are not separated by fences, and are used as farm lands by the tenant living in said house. Prior to June, 1892, there existed a roadway on the northerly side of said lots (which adjoined each other and fronted on said roadway) running westerly from Dixwell Avenue to the city line, which was known as West Hazel Street. In October, 1891, the city engineer of the defendant caused a survey to be made of the profile line of said roadway, and also a profile map showing the existing level of said roadway and the proposed level to which it should be graded, which map the plaintiffs introduced in evidence, with testimony showing that the defendant has graded to that line. Since it was made, said map has remained on file in the office of the department of public works as one of the official maps of said city. Said map, designated as Exhibit 1, is made part of the record. In June, 1892, the city ordered a layout to be made of a highway running westerly from Dixwell Avenue, at the point where said roadway intersected the line of said avenue, and pursuant to said order a survey and layout of such highway was duly made, an assessment of benefits and damages for such layout was duly made, and said survey, layout, and assessment were duly reported to the court of common council, and accepted and adopted. The line of said highway is substantially the line of said roadway. The survey and layout of said highway, containing a map of the land taken therefor and showing the adoption of the layout by the city, is made part of the record as Exhibit 2 ; while the proceed-

ings of the board of compensation, and their adoption by the city, are shown in Exhibit 3. These exhibits (2 and 3) contain no reference to Exhibit 1, nor to any change of grade in the highway as laid out. The plaintiffs offered no testimony to prove the width or exact location of said roadway, or that the same was a legal highway, or had ever been used by the public or anybody other than the tenant of said house, who used it to reach Dixwell Avenue. It did not appear in evidence whether said roadway prior to its layout by the city extended to or beyond the city line. Beginning some time in the year 1897 and continuing up to some time in the year 1901 or 1902, the city cut down the ground within the limits of said highway to the level indicated on said map, Exhibit 1. This cut, at a point 50 feet west of Dixwell Avenue, was $1\frac{6}{10}$ feet. It gradually deepened till at a point 350 feet further west it was 4 feet; and then gradually lessened till at a point about 590 feet west of said avenue the grade "coincides with the pre-existing grade or surface of the ground." Some of the plaintiffs' lots were at the point where the cut was deepest.

Upon these facts the plaintiffs claimed (1) that the layout of said highway, "as appears by Exhibit 2, was at the actual grade of the pre-existing roadway;" (2) that the cutting down of the level of the roadway was a change of grade within the meaning of the statute, for which no damages were assessed by the city. It was admitted by the pleadings that no damages had been assessed to the plaintiffs for injury resulting from a change of grade of an existing highway. The court overruled these claims and held that the cutting down complained of was not a change of grade within the intent and meaning of the statute. Whether the court erred in so holding is the principal question in the case.

The record shows that prior to June, 1892, there was no highway over the plaintiffs' lands, nothing but a mere private way used by their tenant alone; that in that month a highway was legally laid out over said land; and that all the damages and benefits to the plaintiffs caused by such layout were duly assessed, to the satisfaction of the plaintiffs. It

further appears that some five years after the layout the city first began to work and construct the highway to the grade indicated in the profile map, and completed the work in four or five years.

The statute (General Statutes, § 2051) provides that " when the owner of land adjoining a public highway " shall sustain special damages to his property " by reason of any change in the grade of such highway," he shall be entitled to the amount of such special damages. This statute clearly contemplates the existence of a worked highway, completed and in actual use, or opened and made ready for use, and not a mere layout on paper, or a mere tract of land taken for a highway but not yet made fit for public use. Furthermore, the statute contemplates a used or usable highway, having an actual existing grade, to which it was constructed, or at which it is actually used. The words " any change in the grade of such highway," clearly imply an already existing grade. It is true that such grade need not be " a level precisely established by mathematical points and lines ; " it may be only " the surface of the highway as it in fact exists ;" *McGar* v. *Bristol,* 71 Conn. 652, 656 ; but it must in some way have become the existing grade of a worked and used, or usable, highway. When land is taken for highway purposes it does not become a highway, within the meaning of the statute, until it has been made into one by working it to some grade and otherwise completing it for travel. This may require that hollows be filled up and that hills be cut down ; but this is not a change of grade within the meaning of the statute ; it is part of the original working and construction of a new highway ; and damages, if any, accruing therefrom, are not recoverable under the statute here in question. The plaintiffs allege that the injury, for which they sought to recover damages, resulted from changing the existing grade of an existing highway ; and the court has found that they failed to prove that allegation. We think the court was justified in so finding, and in rendering judgment for the defendant.

A single ruling upon evidence remains to be considered.

The plaintiffs objected to the admission in evidence of the layout (Exhibit 2), substantially on the ground that it did not tend to prove a layout " at any grade other than that of the pre-existing roadway," or that any change of such grade was contemplated.    The court admitted the evidence.

We think Exhibit 2, in connection with the other evidence in the case, tended to prove that the highway was, and was intended to be, laid out at the grade shown on the profile map; and that the court did not err in admitting the exhibit.

There is no error.

In this opinion the other judges concurred.